UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rick Glorvigen, as Trustee for the Next, of Kin of decedent James Kosak, | Civil No. 06-2661 (PAM/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Cirrus Design Corporation and the Estate of Gary Prokop, by and through Katherine Prokop as personal representative, | |
| Defendants, | |
| and | |
| Thomas Gartland, as Trustee for the Next of Kin of Gary R. Prokop, Deceased, | |
| Plaintiff, | |
| v. | |
| Cirrus Design Corporation, | |
| Defendant, | |
| and | |
| Cirrus Design Corporation, | |
| Third-Party Plaintiff, | |
| v. | |
| The United States of America, | |
| Third-Party Defendant. | |

This matter is before the Court on Defendant and Third-Party Plaintiff Cirrus Design Corporation's ("Cirrus") Motions for Summary Judgment and to Disqualify Expert Witnesses and/or Strike Expert Opinions. For the reasons that follow, the Court grants the Summary Judgment Motion in part and denies it in part, and denies the expert witness Motion ("Daubert Motion").

**BACKGROUND**

On December 9, 2002, Cirrus sold one of its SR-22 aircraft to Gary Prokop. On January 18, 2003, Prokop crashed the aircraft near Hill City, Minnesota. He and his passenger, James Kosak, both died. The instant wrongful death action arose from the crash. Plaintiff Thomas Gartland is trustee for Prokop's next of kin, and Plaintiff Rick Glorvigen for Kosak's next of kin.

Initially, Gartland and Glorvigen commenced separate actions in Itasca County District Court, the essence being that Cirrus agreed but failed to provide Prokop with adequate ground and flight training on the operation of the SR-22. Plaintiffs alleged that Cirrus and/or its agents omitted required "IFR Flight (Non-Rated)" training that would have provided Prokop with procedures to engage the autopilot to guide the aircraft through weather conditions as they existed. (Gartland Compl. ¶ 5; Glorvigen Compl. ¶¶ 11, 15.) As evidence, Plaintiffs provide a Cirrus Design "Initial Training Syllabus" checklist where the IFR training was left blank. (O'Fallon Decl. Ex. 22.) Cirrus contends that its independent contractor, the University of North Dakota Aerospace Foundation ("UNDAF"), did in fact provide the training even though the checklist indicates otherwise. (Shipek Dep. at 15:10-

16:3 (see Bradley Aff. Ex. K).)

According to Plaintiffs, Cirrus agreed to provide "transition training" as described in an "SR-22 Specifications and Description" document, where under a heading "Pilot Training Agreement" Cirrus promised in relevant part:

> B.   Pilot Training will consist of Cirrus' standard two-day transition training program as follows:
>
> 1.   Aircraft systems training with emphasis on the innovative aspects of the SR22. Examples include combined throttle/propeller control, side yoke and autopilot/trim system.

(O'Fallon Decl. Ex. 23 at 19.) There appears to be no dispute that the training was included in the SR-22's purchase price.

Gartland asserted claims against Cirrus for negligent training, strict products liability, and breach of express and implied warranties. Glorvigen alleged that Cirrus breached its undertaken duty to provide adequate pilot training and an implied warranty of merchantability.[1] Cirrus removed the actions to this Court on grounds that the state-law claims implicate significant federal issues and that the Federal Aviation Act completely preempts them. The Court found the Complaints raised no federal issue indicative of complete preemption and granted the Plaintiffs' Motions to remand. See Glorvigen v. Cirrus Design Corp. and Gartland v. Cirrus Design Corp., Nos. 05-2137 and 05-2138, 2006 WL 399419 (D. Minn. Feb. 16, 2006) (Magnuson, J.) ("Glorvigen I"). The Itasca County court

---

[1] Glorvigen also alleged negligent piloting by Prokop. That allegation is not at issue in the instant Motions.

3

consolidated the actions for purposes of discovery and trial.

On May 10, 2006, Cirrus filed a Third-Party Complaint against Federal Aviation Administration Air Traffic Control Specialists Guy R. Havelka and John A. Hertzog alleging that they were negligent for providing Prokop with inaccurate and incomplete weather briefings. Havelka and Hertzog were certified as acting within the scope of their employment, and the United States of America ("the Government") removed the action to this Court pursuant to 28 U.S.C. § 2679(d)(2). On October 24, 2006, the Court denied additional Motions to Remand and granted a Motion to substitute the Government as a Third-Party Defendant.

Cirrus then filed the Motions before the Court. Cirrus contends that summary judgment is warranted because (1) federal law preempts Plaintiffs' state-law negligence claims, (2) Minnesota recognizes no cause of action for "educational malpractice," (3) Cirrus cannot be held responsible for independent contractor UNDAF's actions, (4) warranty claims were either disclaimed or unsupported by initial evidence of a defect, and (5) there has been no showing of a defect and therefore Gartland's strict liability claim likewise fails. In support of its Daubert Motion, Cirrus contends that Glorvigen's proffered expert, a commercial pilot, lacks expertise to offer expert testimony on Cirrus' general-aviation training. Cirrus further characterizes proffered testimony from the Government's causation experts as unreliable and/or speculative.

**DISCUSSION**

**A.     Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

1.   Preemption

Previously, Cirrus sought removal to this Court based on the "complete preemption" doctrine, which states that a state claim may be removed to federal court "when a federal statute wholly displaces the state-law cause of action." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003). Now, Cirrus seeks summary judgment on grounds that the Federal Aviation Act of 1958, 49 U.S.C. § 40101 et seq., has preempted the field of aviation safety, and/or that the "conflict preemption" doctrine applies because it would be "impossible" for

Cirrus to comply both with FAA standards and state negligence standards. (Def's Supp. Mem. at 18-19 (citing <u>Wuebker v. Wilbur-Ellis Co.</u>, 418 F.3d 883, 887 (8th Cir. 2005)).) <u>See Crosby v. Nat'l Foreign Trade Council</u>, 530 U.S. 363, 372 (2000) ("When Congress intends federal law to 'occupy the field,' state law in that area is preempted. And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute.").

In the Order granting Plaintiffs' Motions to Remand, the Court thoroughly examined whether legislative history or case law evinces a federal intent of field preemption and found no such intent. <u>Glorvigen I</u>, 2006 WL 399419, at *4-*6. Specifically, the Court found that federal regulations were intended to prevent accidents and not to "provide a remedial mechanism for individuals injured by a violation of aviation safety standards," and that "state tort remedies remain for violation of the federally established standards of care." <u>Id.</u> at *4-*5 (citing <u>Abdullah v. Am. Airlines</u>, 181 F.3d 363, 375 (3d Cir. 1999)).

Cirrus has identified no subsequent controlling or persuasive authority to the contrary. Further, when enacting the Federal Aviation Act, Congress included a savings clause stating that federal remedies were "in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). Those remedies include state-law remedies. Accordingly, the Court again concludes that federal law has not preempted the field of aviation safety.

Regarding conflict preemption, the presumption against such preemption is overcome only if federal law states a "clear and manifest purpose" to supersede state authority. Wuebker, 418 F.3d at 887. Cirrus has identified no such clear and manifest language in

federal statutes or regulations. Rather, the § 40120(c) savings clause evinces a clear congressional intent against conflict preemption. Therefore, Cirrus' summary judgment Motion is denied as it relates to claimed preemption of federal law.

2. Negligence

The parties dispute a material fact regarding whether Prokop actually received the IFR autopilot training at issue. Therefore, for purposes of summary judgment, the Court assumes that Prokop did not receive the training and may grant summary judgment only if Plaintiffs' claims fail as a matter of law.

The principal dispute at this stage is whether Cirrus owed a duty regarding Prokop's "transition training." Duty is a question of law. Bjerke v. Johnson, 742 N.W.2d 660, 664 (Minn. 2007). In Minnesota, a duty arises when there is an "obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." L&H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 378 (Minn. 1989) (quotation omitted). The duty to warn can arise in the negligence context and "includes the duty to give adequate instructions for the safe use of the product." Gray v. Badger Mining Co., 676 N.W.2d 268, 274 (Minn. 2004) (citing Frey v. Montgomery Ward & Co., 258 N.W.2d 782, 787 (1977)). In addition, "one who voluntarily assumes a duty must exercise reasonable care or he will be responsible for damages resulting from his failure to do so." Isler v. Burman, 232 N.W.2d 818, 822 (Minn. 1975).

Plaintiffs assert that Cirrus breached its duty to offer Prokop training—a duty that Plaintiffs contend Cirrus voluntarily assumed by including training as part of the SR-22

purchase price.  In moving for summary judgment, Cirrus characterizes the allegations as "educational malpractice" claims that are barred by the decision in <u>Alsides v. Brown Institute, Ltd.</u>, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999).  However, <u>Alsides</u> is distinguishable because the plaintiffs did not sue for negligence but rather for breach of contract, fraud, and misrepresentation.  <u>Id.</u> at 471.  Further, the court held that although claims challenging the "general quality of the instructors" are not actionable in Minnesota, claims involving alleged failure to "perform on specific promises" are actionable if "the claim would not involve an inquiry into the nuances of educational processes and theories." <u>Id.</u> at 472-73.  To the degree that <u>Alsides</u> might be applicable in a negligence context, it provides the Court with no grounds to grant summary judgment in Cirrus' favor.

Cirrus also cites several foreign cases where negligence actions against flight schools were denied.  <u>See, e.g.</u>, <u>Sheesley v. Cessna Aircraft Co.</u>, Nos. 02-4185, 03-5011, 03-5063, 2006 WL 3042793 (D.S.D. Apr. 20, 2006) (claim against third-party defendant flight school was educational malpractice barred under South Dakota law).  However, Cirrus' primary business is building and selling airplanes, not training pilots.

No party has cited a case involving an aircraft manufacturer that allegedly undertook a duty to train a pilot by including transition training as part of the aircraft's purchase price. Nor has the Court found one.  Therefore, general negligence principles apply.  The Court finds the analysis in <u>Germann v. F.L. Smithe Mach. Co.</u>, 395 N.W.2d 922 (Minn. 1986) instructive:

> In determining whether the duty exists, the court goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists. Other issues such as adequacy of the warning, breach of duty and causation remain for jury resolution.

Id. at 924-25. In that case, a jury found a machine manufacturer negligent for failing to warn users that the machine should not be operated without a removable safety bar. Id. at 924. The Minnesota Supreme Court affirmed the legal conclusion that a duty to warn existed because the particular use or misuse was foreseeable. Id. at 925.

Here, by manufacturing an aircraft with an autopilot mechanism and including "transition training" as part of the aircraft's purchase price, Cirrus could have foreseen the injury as alleged in this case. The connection between Cirrus' allegedly negligent training and the Plaintiffs' claimed damage is not so remote that the Court can conclude that public policy requires awarding summary judgment in favor of Cirrus at this stage.

It is true that most negligence cases against aircraft manufacturers involve allegedly faulty equipment. However, "[i]n cases decided on negligence theories, there is general agreement that the duty of care owing by a manufacturer of aircraft or aircraft equipment is a duty of ordinary, reasonable care." 8A Am.Jur.2d Aviation § 179 (2007). Ultimately, "the question [of] whether a manufacturer of airplanes has departed from a standard of ordinary care is to be resolved by measuring his conduct against the standard of what an ordinarily prudent designer and manufacturer of airplanes would have done." Id.

9

Under the unique facts of this case, the Court concludes that the law should "give recognition and effect" to the duty as Plaintiffs allege in their negligence causes of action. See L&H Airco, Inc., 446 N.W.2d at 378. Accordingly, the Court denies Cirrus' Motion for Summary Judgment as it relates to negligence-based claims. In denying summary judgment, the Court expresses no opinion on whether Cirrus breached the duty or whether any breach caused the crash. See Germann, 395 N.W.2d at 924-25 ("[o]ther issues such as . . . breach of duty and causation remain for jury resolution").

### 3. Liability for Independent Contractor

Cirrus argues that even if it owed a training-related duty, it cannot be liable for independent contractor UNDAF's acts or omissions because Cirrus lacked control over UNDAF and there was no agency relationship. However, whether an agency relationship exists is a question of fact. White v. Boucher, 322 N.W.2d 560, 566 (Minn. 1982); see also Kellogg v. Woods, 720 N.W.2d 845, 852 (Minn. Ct. App. 2006) ("a principal is liable for his agents' asks committed in the scope of the agency relationship"). Accordingly, Cirrus' Motion for Summary Judgment as it relates to not being liable for UNDAF's acts or omissions must be denied.

### 4. Strict Liability

Gartland's strict liability appears to be based on the aircraft being in a "defective condition" and "unreasonably dangerous." (Compl. ¶¶ 7, 10.) To prevail on this claim, Gartland must prove (1) that Cirrus' product was in a defective condition unreasonably dangerous for its intended use, (2) that the defect existed when the product left Cirrus'

control, and (3) that the defect was the proximate cause of the injury sustained. <u>Bilotta v. Kelley Co.</u>, 346 N.W.2d 616, 623 n.3 (Minn. 1984). Gartland has made no initial showing of manufacturing defect, and his attempt to assert that the aircraft "was defective because of inadequate instructions" fails. (<u>See</u> Gartland's Opp'n Mem. at 24.) Therefore, the Court grants summary judgment in favor of Cirrus as it relates to Gartland's strict liability claim.

    5.    <u>Warranty Claims</u>

Gartland asserts that Cirrus breached express and implied warranties, while Gloriven alleges breach of an implied warranty of merchantability. "To establish a warranty claim the plaintiff basically must prove: the existence of a warranty, a breach, and a causal link between the breach and the alleged harm." <u>Peterson v. Bendix Home Sys., Inc.</u>, 318 N.W.2d 50, 52-53 (Minn. 1982). Cirrus moves for summary judgment on various grounds including that Prokop disclaimed implied warranties, Plaintiffs made no initial showing of manufacturing defect, and the training was not subject to a warranty claim. As explained below, the Court grants summary judgment in favor of Cirrus on all warranty claims.

    a.    Implied Warranty

A seller may use "conspicuous" written language to disclaim implied warranties. Minn. Stat. § 336.2-316(2); <u>Transp. Corp. of Am. v. Int'l Bus. Mach. Corp.</u>, 30 F.3d 953, 959 (8th Cir. 1994). Here, the purchase agreement that Prokop signed contained on the back page a disclaimer stating that Cirrus "SPECIFICALLY EXCLUDES THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE." (Bradley Aff. Ex. S.) This satisfies the § 336.2-316(2) disclaimer

11

requirement. Accordingly, Gartland's implied warranty claim fails as a matter of law.

Further, Gartland's allegation is that Cirrus "impliedly or expressly warranted that its aircraft would be fit and safe." (Gartland Compl. ¶ 11.) Gartland's failure to provide an initial showing of an unsafe aircraft provides additional grounds for granting summary judgment in favor of Cirrus on his implied warranty claim. See Anderson, 477 U.S. at 256 (party opposing summary judgment must set forth specific facts in record showing there is genuine issue for trial). Under these circumstances, the Court concludes that to the degree Glorvigen has standing to maintain an implied-warranty claim, this claim fails as a matter of law as well. See Transp. Corp. of Am., 30 F.3d at 958-59 (extending disclaimer to third-party purchaser).

        b.      Express Warranty

As with his implied warranty claim, Gartland's allegation involving an express warranty centers on an allegedly unfit and unsafe aircraft. (Gartland Compl. ¶ 11.) In opposition to summary judgment, Gartland characterizes the "Pilot Training Agreement" in the SR-22 Specifications and Description Manual as constituting an express warranty because Cirrus "specifically state[d] they will provide training on the avionics." (Gartland's Opp'n Mem. at 25-26.)

Express warranties are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," and/or by "[a]ny description of the goods which is made part of the basis of the bargain." Minn. Stat. § 336.2-313(a)-(b). When a transaction includes a combination of goods and

services, a warranty claim may lie under the Uniform Commercial Code "if the predominant aspect of the contract is the sale of goods." LeSueur Creamery, Inc. v. Haskon, Inc., 660 F.2d 342, 346 n.6 (8th Cir. 1981) (applying Minnesota law). However, Gartland has provided no authority indicating that alleged failure to follow through on avionics training makes an aircraft unfit or unsafe under an express warranty theory. As discussed above, any such failure is more appropriately litigated in the negligence context. Even taking Gartland's allegations as true, his express warranty claim fails as a matter of law.

**C.    Daubert Motion**

Glorvigen's proffered expert is commercial airline pilot James M. Walters, who has trained pilots and logged 24,000 hours of flight time over thirty-six years on a variety of aircraft. The Government's proffered experts are Kenneth L. Orloff, a mechanical engineer and aerodynamics researcher; and Pavel Pekarsky, Chief Pilot for an entity that owns several Cirrus SR-22s. Cirrus seeks to have the experts and/or their testimony excluded pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), which directs that expert witness testimony is admissible if: (1) the evidence is based on scientific, technical or other specialized knowledge useful to the factfinder; (2) the witness is qualified to assist the factfinder; and (3) the evidence is reliable or trustworthy. Id. at 589-90; Fed. R. Evid. 702. For reasons discussed below, the Court denies the Motion as to all three experts.

   1.    Walters

Walters submitted a report that criticized both Cirrus' training and its decision to introduce "an advanced technology aircraft without appropriate analysis of training

requirements necessary for safe operation by general aviation pilots." Cirrus contends that Walters' report and testimony must be excluded because as a commercial airline pilot he is unqualified to offer admissible opinions as to Cirrus' general-aviation training, and because Walters' conclusions are not based on empirical scientific criteria.

However, the record indicates that Walters has expertise in so-called "transition training"—teaching pilots to fly new and perhaps more technically advanced aircraft. Therefore, the Court finds Walters qualified to testify. See Daubert, 509 U.S. at 592-93. The fact that most of Walters' experience has been with commercial jetliners goes to "the weight, not the admissibility, of the evidence." LeMond Cycling, Inc. v. PTI Holding, Inc., No. 03-5441, 2005 WL 102969, at *8 (D. Minn. Jan. 14, 2005) (Magnuson, J.).

2. Orloff and Pekarsky

According to the Government, Orloff and Pekarsky tested an exemplar SR-22 to trace Prokop's flight path in an apparent attempt to determine why Prokop took the path that he did. Together, they concluded that Prokop was following procedures consistent with a door opening in flight. The Court finds the experts qualified, and concludes that the fact that their evidence is not conclusive does not make it unreliable under Daubert.

**CONCLUSION**

Federal law does not preempt Plaintiffs' state-law claims. Summary judgment cannot be granted in favor of Cirrus on Plaintiffs' negligence claims because the parties dispute a material fact and because the Court finds that Cirrus had a duty associated with pilot training. However, Cirrus is entitled to summary judgment on all warranty and strict liability claims. The Court finds no grounds to grant Cirrus' Daubert Motion. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant and Third-Party Plaintiff's Motion for Summary Judgment (Docket No. 77) is **GRANTED in part** and **DENIED in part**; and

2. Defendant and Thirty Party Plaintiff's Motion to Disqualify Expert Witnesses and/or Strike Expert Opinions (Docket No. 71) is **DENIED**.

Dated:  February 11, 2008

 s/Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge